# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Arthur Pelkey, | Civil Action No.: 0:18-00967-JMC |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| White Oak Management, Inc., and White Oak Manor – Lancaster, Inc., | |
| Defendants. | |

In this employment discrimination case, Plaintiff Arthur Pelkey ("Pelkey") sued his former employers, Defendants White Oak Management, Inc. and White Oak Manor, Inc. (collectively "Defendants"). Pelkey alleges claims for hostile work environment and discrimination pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12102, *et seq.*, as amended ("ADA"). (ECF No. 1.) This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") (ECF No. 17) filed on November 21, 2019. Within the Report, the Magistrate Judge recommends that the court deny Defendants' Motion for Summary Judgment (ECF No. 14). Specifically, the Report recommends denying summary judgment as to both of Pelkey's claims—Pelkey's disability harassment claim (claim 1) and his termination of employment discrimination claim (claim 2). Defendants do not object to the Report's recommendation as to Pelkey's harassment claim (claim 1), but Defendants object only to the recommendation to deny summary judgment as to Pelkey's termination of employment disability claim (claim 2). For the reasons stated herein, the court **ACCEPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Report (ECF No. 17). The court **ACCEPTS** the report and

**DENIES** Defendants' Motion for Summary Judgment (ECF No. 14) as to Pelkey's disability harassment claim (claim 1). Further, the court **REJECTS** the Report and **GRANTS** Defendant's Motion as to Pelkey's termination of employment disability claim (claim 2).

## I. PROCEDURAL AND FACTUAL BACKGROUND

The Report provides a thorough examination of the facts, which this court incorporates herein without a full recitation. (ECF No. 17 at 2–10.) As background, Defendants operate a long-term care facility in Lancaster, South Carolina. Beginning in July of 1999, Pelkey worked as a Maintenance Assistant at the facility and Pelkey's duties were limited to landscaping and painting when he was initially hired. (ECF No. 15-1 at 11-12.)[1] Pelkey has a history of learning disabilities, requiring special education as a child, and suffered a traumatic brain injury from a car accident in 1996—just three years prior to his employment with Defendants.(ECF No. 15-1, ¶¶ 2, 3, 5.) During Pelkey's employment, Defendants added duties to his position that consisted primarily of assisting Pelkey's former supervisor, Fred Phillips ("Phillips"). (ECF No. 15-1 at 13-14.) In September 2010, Phipps and Plaintiff signed a modified description of job duties. (ECF No. 15-10.) Phipps marked "no" next to the duties Pelkey did not perform. *Id*. Phipps also accommodated Pelkey by giving him only one task at a time and keeping him away from distractions. (ECF No. 15-5 at 5.) Around 2013, Phillips retired and Pelkey was assigned a new manager, James Driggers

---

[1] According to Pelkey, Plaintiff has a history of learning disabilities, requiring special education as a child, and suffered a traumatic brain injury from a car accident in 1996. Pl. Decl. ¶¶ 2, 3, 5. Three years after the car accident, Defendants hired Plaintiff as a maintenance assistant for its Lancaster facility. The maintenance supervisor, Fred Phipps, knew of Plaintiff's mental capacity issues before hiring him. (ECF No. 15-5, ¶¶ 2, 3.) Under Phipps, Plaintiff performed mainly landscaping and interior painting, but he also assisted with other maintenance duties, including providing supplies to housekeeping staff, maintaining the supply room, running errands, cleaning and maintaining the grounds, as well as hanging pictures and changing lightbulbs. (ECF No. 15-1 at 12:11–25; 13:18–14:2; 19:10–24; 20:5–24:9.)

("Driggers"). (ECF No.15-1 at 1, ¶ 2.) After Phipps resigned, activities director Jennifer Barton ("Barton"), spoke to facility administrator Michele Riordan, the Lancaster human resource ("HR") manager Scott Wallace, and staff coordinator Maria Saleeby to ensure they were all aware of Pelkey's disability and that his limitations would be communicated to James Driggers, as Phipps' successor. (ECF No. 15-3 at 2, ¶ 8.) She also personally spoke to Driggers about Pelkey's limitations. *Id.*

According to Pelkey's Complaint, things went downhill when he began working under Driggers. Pelkey alleges that Driggers "intimidated" him, "sp[oke] very harshly" to him, "talk[ed] down" to him, and has "cursed" him. (ECF No. 15 at 12.) According to Pelkey, his managers "set up [fabricated reasons] to justify a termination case that did not exist had Defendants honored Plaintiff's accommodations, treated him with the same respect accorded employees that do not have disabilities, and communicated with him clearly and in good faith." (ECF No. 1 at 4, ¶ 20.) On March 31, 2015, Pelkey was terminated. (ECF No. 14-1 at 4.) On June 26, 2015, Pelkey filed an EEOC Charge alleging disability discrimination and harassment under the ADA. (*Id.*)

Pelkey filed his Complaint on April 10, 2018 (ECF No. 1), alleging violations of the ADA. Defendants filed their Motion for Summary Judgment (ECF No. 14) on April 19, 2019. The Magistrate Judge filed her Report on November 21, 2019. (ECF No. 17.) In analyzing Pelkey's claims, the Magistrate Judge recommended denying summary judgment as to both of Pelkey's claims. As to Defendants 'first claim,[2] the Magistrate Judge found that the continuing violation

---

[2] Defendants first argue Plaintiff's testimony regarding incidents occurring prior to August 2014 may not be used to support his hostile work environment claim because he did not file a Charge of Discrimination ("Charge") until June 26, 2015.

doctrine applied, and "Plaintiff's allegations regarding harassment [were] not barred by the statute of limitations." (ECF No. 17 at 12.)

Next, regarding Pelkey's termination of employment disability claim, the Magistrate Judge was unpersuaded by Defendants' argument that Pelkey's Social Security Benefits Application precluded him from claiming disability discrimination. Specifically, Defendants argued that Pelkey cannot be considered a "qualified person" under the ADA because he "claimed that he was totally disabled when he applied for total disability" with the Social Security Administration. (ECF No. 14-1 at 12.) The crux of Defendants' argument is that to survive summary judgment, Pelkey is required to proffer an explanation for the apparent discrepancy between the sworn statement that he is unable to work, which he made under oath and during a recorded SSDI proceeding and his ADA claim.

On November 21, 2019, the Magistrate Judge apprised both parties of their right to file specific objections to the Report. (ECF No. 17 at 1.) Defendants timely objected to the Magistrate Judge's Report on December 19, 2019. (ECF No. 22.) In the sole objection to the Report, Defendants argue that the Magistrate Judge erred when she did not "hold Plaintiff's feet to the fire on the issue of having failed to proffer an explanation for the discrepancy between his application for permanent and total disability and his termination of employment disability discrimination claim." (ECF No. 22 at 4.) Pelkey did not file any objections to the Report. On March 2, 2020, Defendants filed their Supplemental Evidence Supporting their Objections to the Report, which included a transcript excerpt of Pelkey's SSDI proceeding provided by Plaintiffs to Defendants after the Report was issued. (ECF No. 31.)[3] On March 3, 2020, the court held a hearing on the

---

[3] While Plaintiffs objected to Defendants' filing of the proceeding transcript and recording as "untimely", Plaintiffs do not dispute that "Defendants did not have the recording until December 21, 2019", one month after the Report was issued. (ECF No. 32.) The court observes that

summary judgment issue and heard arguments from both sides regarding Defendants' Objections to the Report. Defendants' Objections to the Report are ripe for review.

## II. LEGAL STANDARD

A. <u>The Magistrate Judge's Report</u>

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. As such, the court is charged with making de novo determinations of those portions of the Report to which specific objections are made. *See* 28 U.S.C. § 636(b)(1). *See also* Fed. R. Civ. P. 72(b)(3). In the absence of specific objections to the Magistrate Judge's Report, the court is not required to give any explanation for adopting the Report. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Rather, "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The district

---

Defendants were not in possession of the transcript or the recording at the time the Report was issued. Therefore, the court will consider the recording and transcript as "new evidence" and consider it here under *de novo* review. *See Henley v. FMC Corp.*, 20 F. App'x 108, 115–16 (4th Cir. 2001) (district court did not err by allowing new testimony where testimony was not in possession of offering party before order entered and information obtained was material to outcome of case).

judge must determine de novo any properly filed objections to the magistrate judge's disposition. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

B. <u>Summary Judgment Under Fed. R. Civ. P. 56(a)</u>

A federal court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). In a summary judgment motion, "[a] court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). Nevertheless, "the nonmoving party . . . must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). Summary judgment is therefore appropriate "when the nonmoving party has the burden of proof on an essential element of her case and does not make, after adequate time for discovery, a showing sufficient to establish that element." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322–23).

### III. DISCUSSION

Pelkey presents claims for discrimination and harassment under the ADA. (ECF No. 1-1 at 5-8.) The ADA "prohibits a covered employer from discriminating 'against a qualified

individual with a disability because of the disability of such individual.'" *EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000) (quoting 42 U.S.C. § 12112(a)). A "qualified individual with a disability" is a person "who, with or without reasonable accommodation, can perform the essential functions of his job." 42 U.S.C. § 12111(8). The plaintiff bears the burden of showing that he can perform the essential functions of the job and is, therefore, qualified. *See Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265-66 (4th Cir. 1995). Thus, to bring any of his claims, Pelkey must show that he is a qualified individual under the Act. Defendants assert that Pelkey has failed to show that he is a "qualified individual" because of the inconsistency between Pelkey's SSDI application, Pelkey's assertion that he is unable to work, and his ADA claim. (*Id.*) In response, Pelkey argues that he "maintains that he could perform the essential functions of his job with the accommodations Defendants agreed to and honored for many years." (ECF No. 15 at 28.), and any inconsistency between his ADA and SSDI claims can be explained because the SSA did not consider the potential effect of a reasonable workplace accommodation. (*Id.*)

"The mere act of applying for disability benefits does not estop a plaintiff from making a subsequent ADA claim." *Fox v. General Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). "[D]espite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should" presume that "the claimant or recipient of ... benefits is judicially estopped from asserting that he is a qualified individual with a disability." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802, 807 (1999). This is so because the two statutes pursue different statutory purposes and require different, though related, inquiries into an individual's disability. *See id.* at 802-05. For example, the ADA considers a plaintiff to be a qualified individual with a disability if he is able to perform the job in question with reasonable accommodation, whereas other statutes, like the Social Security Act, do not

consider the possibility of reasonable accommodation when determining whether a claimant is disabled. *See id*.

Based on Pelkey's SSDI Proceeding, the record reflects that Pelkey's onset date for purposes of his social security disabilities benefits was March 28, 2015 (three days before the March 31, 2015 termination date) due to his medical conditions and he remained disabled at the time of his application. (ECF No. 15-6 at 3.) The record also reflects that Pelkey filed his SSDI application on December 7, 2015. (ECF No. 31.) While at the time, the Magistrate Judge was correct in determining that "the sworn statement is not before the court to consider" (ECF No. 17 at 13.), the court now has Pelkey's sworn statement that he is unable to work. (ECF No. 31.)

> ALJ: …why do you believe you are disabled and unable to perform any job? And I', sure [your attorney] has explained that it's not just necessarily jobs you did in the past, but, but any job at all?
>
> Pelkey: Well this stimulator is hard for me to do any kind of work because if I got to go to the restroom, I have to go immediately. And I can't sit so long or stand or anything like that because it will start hurting.

However, "a plaintiff's sworn assertion in an application for disability benefits that [he] is, for example, 'unable to work' will appear to negate an essential element of [his] ADA case—at least if [he] does not offer a sufficient explanation." *Id*. at 806. Thus, "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, [he] must proffer a sufficient explanation." *Id*. "**To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of [his] job, without or without 'reasonable accommodation**.'" *Id*. at 807. Thus, to survive summary judgment, Pelkey must offer a sufficient explanation "as to why he was both totally disabled, and so entitled to [social security] benefits,

and a qualified individual with a disability entitled to bring a claim under the ADA." *Fox*, 247 F.3d at 178. Pelkey contends that the SSA does not consider the effect of a reasonable workplace accommodation on his ability to work. (ECF No. 15 at 28.) The court observes, however, that this explanation is not sufficient to survive summary judgment. Indeed, the First Circuit, in *Pena v. Honeywell International*, 923 F.3d 18, is instructive here.

> Pena argues that she has given an adequate explanation for the apparent inconsistency between her SSDI statements and her position in this litigation. **She first argues that it is enough for her to say in her brief that being disabled under the ADA is different from being disabled for SSDI benefits, because the ADA takes into account an employer's duty to make reasonable accommodations**, while SSDI does not. Pena argues that if her SSDI application or the ALJ had asked if she needed disability accommodations to work, she would have responded "yes." She states that this is sufficient to meet her burden under *Cleveland*. **This misreads (and would read out of the law) *Cleveland's* reasoned explanation requirement.** When the plaintiff in *Cleveland* made these same general arguments, the court did not accept them; rather, it remanded for factual findings. *Id*.

Thus, Pelkey's general statement does not "explain or even address how, in light of his assertions of disability, he was, in fact, qualified to perform the essential functions of the position." *Lane v. BFI Waste Sys. of North America*, 257 F.3d 766, 770 (8th Cir. 2001). "Therefore, there is no explanation in the record 'to warrant a reasonable juror's concluding that, assuming the truth of, or [the Plaintiff's] good faith belief in, the earlier statement, [he] could nonetheless perform the essential functions of [his] job.'" *Id.* (quoting *Cleveland*, 526 U.S. at 807). Accordingly, Pelkey has failed to create a genuine issue of material fact as to whether he is a qualified individual with a disability under the ADA and summary judgment is appropriate on his termination of employment disability claim (claim 2). Therefore, the court **GRANTS** summary judgment as to Pelkey's termination of employment disability claim (claim 2).

## IV. CONCLUSION

Based on the foregoing reasons, the court **ACCEPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Report (ECF No. 17). The court **ACCEPTS** the report and **DENIES** Defendants' Motion for Summary Judgment (ECF No. 14) as to Pelkey's disability harassment claim (claim 1). Further, the court **REJECTS** the Report and **GRANTS** Defendant's Motion (ECF No. 14) as to Pelkey's termination of employment disability claim (claim 2).

*J. Michelle Childs*

**IT IS SO ORDERED.** United States District Judge

March 13, 2020
Columbia, SC